# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

KIM ARNOLD, WILLIAM PRUITT and )
ROSE YOUNG PRUITT, on behalf of )
themselves and all others similarly situated, )
                            )
        Plaintiffs, )
                            )
        vs. )        Case No. 4:10CV2429SNLJ
                            )
AT&T, INC., AT&T CORP., AMERICAN )
TELEPHONE AND TELEGRAPH CO., )
and SOUTHWESTERN BELL )
TELEPHONE CO. d/b/a )
AT&T MISSOURI, )
                            )
        Defendants. )

## MEMORANDUM

Plaintiffs are landline telephone customers of the defendants. Their claims arise out of and relate to charges on their telephone bills which they allege they were billed for, and paid for, products or services from third parties that they did not order or authorize. Specifically, they allege that they incurred unauthorized prepaid services charges for services that came under the names of Enhanced Services, HBS Billing Services, and/or ILD Teleservices. They bring this purported putative nationwide class action complaint for damages against the defendants for violation of the Federal Communications Act (FCA) (Count I); unjust enrichment (Count II); breach of written contract (Count III); breach of the implied covenant of good faith and fair dealing (Count IV); common law fraud (Count V); violation of the Missouri Merchandising Practices Act (MMPA)(Count VI); and conspiracy to commit fraud (Count VII). This matter is before the Court on defendants AT&T Corp.'s and Southwestern Bell Telephone Co. d/b/a AT&T Missouri's (hereinafter referred to as simply AT&T Missouri) Rule 12(b)(6) motion to

dismiss [20], filed March 21, 2011. After some delay, all responsive pleadings have now been filed and the matter is ripe for disposition.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d. 623, 627 (8th Cir. 2001) *quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)(abrogating the prior "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id., 127 U.S. at 1974. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." Id., 127 U.S. at 1974.

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Kottschade v. City of Rochester, 319 F.3d. 1038, 1040 (8th Cir. 2003). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1265 (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062

(8th Cir. 2005) *citing* <u>Schaller Tel. Co. v. Golden Sky Systems</u>, 298 F.3d. 736, 740 (8th Cir.

2002).  In viewing the complaint in the light most favorable to the plaintiff, the court should not

dismiss it merely because the court doubts that the plaintiff will be able to prove all of the

necessary allegations.  <u>Bennett v. Berg</u>, 685 F.2d. 1053, 1058 (8th Cir. 1982).  The primary issue

for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but

whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present

evidence in support of that claim.  A complaint may not be dismissed based upon a district

court's assessment that the plaintiff will fail to present evidentiary support for the complaint's

allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder.

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. at 1969, n.8; <u>Neitzke v. Williams</u>, 490 U.S. at 327

("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a

complaint's factual allegations.").

Defendants contend that the plaintiffs' complaint must be dismissed for several reasons.

Firstly, they contend that the parties' relationship and the claims arising from that contractual

relationship is governed by tariffs, which contain a limitation of liability clause that bars the

plaintiffs' lawsuit.  Secondly, defendants contend that the plaintiffs' claims in Counts I-V and

Count VII are barred by the voluntary payment doctrine because the plaintiffs pled that they

knowingly paid a disclosed line-item prior to disputing same.  Thirdly, defendants contend that

Counts V and VII are also barred pursuant to the economic loss doctrine because recovery in tort

for purely economic damages is limited to specific instances of loss, and Counts V and VII are

claims predicated upon a contractual relationship, and facts are not pled giving rise to any tort

allowing for purely economic damages.  Next, defendants argue that Count I is barred because

neither the FCA's regulations nor the Federal Communication Commission's (FCC) truth-in-

billing regulations apply to the defendants' billing of charges for a third-party. Next, defendants contend that the plaintiffs cannot recover on their quasi-contract theory as contained in Count II because the plaintiffs have alleged that they entered into a written contract with defendants and premise their allegations on this written contract; therefore, they cannot recover on a quasi-contract theory where an express contract exists. Finally, defendants contend that the plaintiffs have failed to plead that the defendants have acted in bad faith, a necessary requisite for supporting a claim for breach of the covenant of good faith and fair dealing as contained in Count IV of their complaint.

Plaintiffs contend that the alleged tariffs do not apply in this case, or in the alternative, purported tariffs are too broadly worded to be enforceable. They further contend that their claims of fraud and conspiracy to commit fraud trigger the intentional tort exception to the alleged limitation of liability clause(s). Plaintiffs further contend that they did not make "voluntary payments" because the defendants "hid" the third-party billing in the plaintiffs' billing in violation of certain FCC regulations, and defendants failed to disclose to the plaintiffs that the alleged third-party charges were not authorized by the plaintiffs and whether non-payment of said charges would result in the disconnection of services. Plaintiffs further contend that their claims of fraud and conspiracy to commit fraud survive dismissal under the economic loss doctrine because the defendants owed the plaintiffs an extra-contractual duty with respect to billing. Plaintiffs further contend that the plaintiffs' allegations regarding the defendants' billing practices are governed by the FCA (Federal Communications Act) and its regulations. Finally, plaintiffs contend that they have properly pled a claim for breach of the covenant of fair dealing and good faith because the defendants acted "dishonestly".

Before addressing the specific points raised by the defendants for dismissal, there are two issues that must first be addressed. Firstly, defendants contend that the plaintiffs' complaint should be dismissed in its entirety for failure to plead sufficient facts to meet this circuit's standard for surviving a motion to dismiss. After careful review of the plaintiffs' complaint, the Court determines that the plaintiffs have met the "plausibility" standard for pleading said claims as required when reviewing a Rule 12(b)(6) motion.

Secondly, along with their motion, the defendants have asked the Court to take judicial notice of certain documents: 1) the plaintiffs' billing statements giving rise to this cause of action; 2) the applicable tariffs on file with the Missouri Public Commission; and 3) applicable FCC orders and regulations. Normally, when reviewing a Rule 12(b)(6) motion, and documents outside the pleadings are presented and not excluded, the motion must be treated as a motion for summary judgment. Rule 12(d) Fed.R.Civ.Pro. Documents that are necessarily embraced by the pleadings are not "matters outside the pleadings" for purposes of Rule 12(d). Enervations, Inc. v. Minnesota Mining & Mfg. Co., 380 F.3d. 1066, 1069 (8th Cir. 2004); *see also*, Zoltek Corp. v. Structural Polymer Group, 2008 WL 4921611, *2 (E.D.Mo. 2008) *rev. on other gds.* Zoltek Corp, at 592 F.3d. 893 (8th Cir. 2010). The plaintiffs' billing records are necessarily embraced by the pleadings and can be considered under the instant 12(b)(6) motion without converting the instant dismissal motion to a motion for summary judgment. Moreover, the other documents are properly subject to judicial notice pursuant to Federal Rule of Evidence 201(b)(2) because they are documents whose existence is not subject to reasonable dispute because [it] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.". The Court notes that the plaintiffs have not opposed the defendants' request or disputed the accuracy of the subject documents. In making its ultimate decision, the Court has not considered any

other exhibits that may have been filed by either party that are not necessarily embraced by the pleadings.

In their complaint, the plaintiffs allege that these two defendants provide local landline services to plaintiffs, as well as similarly-situated customers of defendants throughout the United States. Plaintiffs contend that they contracted with the defendants for landline services, and in connection with this contractual relationship, began to receive monthly billings said landline services. Plaintiffs further contend, that during the relevant time-period, defendants began placing on their respective bills charges for "Enhanced Services," "HBS Billing Services," and/or "ILD Teleservices." Plaintiffs contend that they never authorized these "services" and to their knowledge, have never used these unauthorized services. Finally, plaintiffs contend that the defendants have placed these unauthorized charges in their billing statements in such a manner as to "fail[ed] to clearly and conspicuously distinguish between which charges would and would not result in disconnection for nonpayment." Plaintiffs' Complaint, ¶39; Plaintiffs' Memorandum in Opposition [34], pg. 12.

## Tariffs - Limitation of Liability Clause

Plaintiffs have clearly alleged that this cause of action arises out of a written contractual relationship between the parties. Plaintiffs' Complaint, ¶¶10 and 45-47. This contractual relationship is governed by a tariff.

> A tariff is a document which lists a public utility's services and the rates for those services. A tariff that has been approved by the Public Service Commission becomes Missouri law and has the same force and effect as a statute enacted by the legislature. When analyzing a tariff, if the tariff is clear and unambiguous, the court cannot give it another meaning.

> The filed tariff, or filed rate, doctrine governs a utility's relationship with its customers and provides that any rate filed with the appropriate regulatory agency is sanctioned by the government and

6

> cannot be the subject of legal action. The filed tariff doctrine
> conclusively presumes that both a utility and its customers know
> the contents and effect of the published tariffs.

Bauer v. Southwestern Bell Telephone Co., 958 S.W.2d. 568, 570 (Mo.App. 1997)(internal citations omitted); *see*, Warner v. Southwestern Bell Telephone Co., 428 S.W.2d. 596 (Mo. 1968); Snelling v. Southwestern Bell Telephone Co., 996 S.W.2d. 601, 604 (Mo.App. 1999); Allstates Transworld Vanlines, Inc. v. Southwestern Bell Telephone Co., 937 S.W.2d. 314, 316-318 (Mo.App. 1996). In determining whether the language of a tariff is clear and unambiguous, the standard to be applied is whether the tariff's terms are plain and clear to someone of ordinary intelligence. Allstates Transworld Vanlines, at 317 *citing* Wolff Shoe Co. v. Director of Revenue, 762 S.W.2d. 29, 31 [3-5](Mo. 1988).

The contractual relationship, as alleged by the plaintiffs, is governed by AT&T Missouri's General Exchange Tariff No. 35, specifically Subsection 17 entitled "Rules and Regulations Applying to All Customers' Contracts." Defendants' Exhibit A. Defendants contend that the plaintiffs' entire cause of action should be dismissed pursuant to a limitation of liability clause as set forth by § 17.8.5. Section 17.8.5 reads as follows:

> The services furnished by the Telephone Company, in addition to the
> limitations set forth preceding, also are subject to the following limitations:
> the Telephone Company shall not be liable for damage arising out of
> mistakes, omissions, interruptions, delays, errors or defects in transmission
> or other injury including, **but not limited to**, injuries to persons or
> property from voltages or currents transmitted over the service of the
> Telephone Company, (1) caused by customer-provided equipment
> (except where a contributing cause is the malfunctioning of a Telephone
> Company-provided connecting arrangement, in which event the liability
> of the Telephone Company shall not exceed an amount equal to a
> proportional amount of the Telephone Company billing for the period of
> service during which such mistake, omission, interruption, delay, error,
> defect in transmission or injury occurs), or (2) not prevented by customer-
> provided equipment.

Defendants' Exhibit A.  Defendants further assert that defendant AT&T Corp.'s tariff contains similar limitations of liability clauses.  *See*, Defendants' Exhibit B - SBC Advanced Solutions, Inc. Mo. P.S.C.  No. 1, Subsection 2.2 entitled "Limitations of Liability/Indemnity; Defendants' Exhibit C - SBC Advanced Solutions, Inc. Mo. P.S.C.  No. 3, Subsection 2.3 entitled "Limitations of Liability."

Defendants contend that these limitation of liability clauses are to be applied in their broadest terms and serve to bar the plaintiffs' cause of action.  Plaintiffs contend that 1) AT&T Missouri's limitation of liability clause does not apply because it does not specifically use language limiting liability for the placing of unauthorized charges on the plaintiffs' telephone bills; and 2) even if applicable, plaintiffs' cause of action is exempt because a limitation of liability clause does not protect the defendants from intentional torts such as fraud and/or conspiracy to commit fraud.

Limitations of liability contained in a telecommunications company's tariff are binding upon telephone subscribers and become part of the law, when filed under authority of law and unless found to be unreasonable, and regardless of whether or not the subscriber know of the limitations.  Warner v. Southwestern Bell Telephone Co., at 601.  However, although such limitation provisions are generally valid and enforceable, they will not protect the company from acts which are intentional torts; i.e. conduct that is "wanton or willful."  Warner, at 603; *see also*, Tobler's Flowers, Inc. v. Southwestern Bell Telephone Co., 632 S.W.2d. 15, 17 (Mo.App. 1982) *citing* Engman v. Southwestern Bell Telephone Co., 591 S.W.2d. 78 (Mo.App. 1980).

Plaintiffs contend that because they are alleging fraud claims against the defendants in that the defendants "misrepresented" the charges imposed for unauthorized prepaid services and did so either "knowingly or with reckless disregard" of the alleged truth of such

"misrepresentations".  Plaintiffs' Complaint, ¶64.  Furthermore, plaintiffs allege that the

defendants "conspired" with certain identified third-parties to defraud plaintiffs by imposing

charges for prepaid services that were never ordered, authorized, or used by the plaintiffs.

Plaintiffs contend that they "detrimentally relied" upon these "misrepresentations."  Plaintiffs'

Complaint, ¶¶79-82.

Forgetting for the moment the issue of  "third-party billing," nowhere in their complaint

do the plaintiffs allege that the defendants' act of placing the contested charges on the plaintiffs'

telephone bills was "wanton and willful."  Furthermore, in 1997 the Missouri Court of Appeals

rejected the plaintiff's contention that the filed tariff doctrine is inapplicable where he alleged

fraud.  Bauer v. Southwestern Bell Telephone Co., 958 S.W.2d. 568, 570 (Mo.App. 1997).  The

appellate court found that the plaintiff's cause of action challenging defendant Southwestern

Bell's marketing and solicitation of a worthless 900 call blocker service  to be within the

parameters of the applicable tariff's limitation of liability clause regarding services.  The

appellate court rejected the plaintiff's rate/service distinction that the filed tariff doctrine did not

apply because he was not challenging defendant's rate charged.  Id., at 570-71.

In the current case, the applicable limitations of liability clause is broadly-worded.[1]  At

first glance, it does appear to be narrowly tailored to injuries to person or property due to

transmission or transmission equipment issues.  However, the clause does include the phrase

"including, but not limited to" which expands the parameters of the subject clause.  Missouri

courts have applied similar limitations of liability clauses to directory listings finding them to be

---

[1]The plaintiffs challenge only the applicability of AT&T Missouri's tariff.  They fail to
challenge in any way the applicability of AT&T Corp.'s tariff

"services" although not explicitly identified as such.  *See*, <u>Warner</u>, *supra.*; <u>Allstates Transworld Vanlines</u>, *supra.*

*Finally, as stated earlier, defendants are subject to the provisions of Missouri law* establishing the Missouri Public Service Commission (MPSC) and its lawful regulations. Chapters 386 and 392 R.S.Mo. (2010).  The statutes contained therein constitute "a complete system for the regulation of public utilities," including telecommunications companies operating within Missouri.  <u>Warner</u>, at 601.  The MPSC is delegated with rulemaking authority. § 386.125 R.S.Mo.  As such, it has promulgated rules and regulations governing telecommunications companies.  4 CSR 240-33.010 *et. seq.*  Under the Missouri Code of State Regulations (CSR), Title 4, Division 240, Chapter 33 governs the service and billing practices for telecommunications companies.  4 CSR 240-33.045 governs the billing of items that should be separately identified on customer bills.[2]  Rule 33.045(6) states: "Any telecommunications company that serves as a billing agent for another entity shall not be held liable for any violation of this rule for that portion of the customer bill that relates to that other entity."

Plaintiffs contend that because they do not use the term "third-party billing" and have chosen not to sue any identified "third-parties", that the issue of third-party billing simply does not exist in this lawsuit.  The plaintiffs' contention is meritless.

Despite their "inartful pleading," it is clear that the heart of this lawsuit is the billing for services provided by third-parties, not the defendants.  Nowhere in the complaint do the plaintiffs allege that defendants failed to provide the unauthorized prepaid services.  They simply allege

---

[2]The Court is mindful of the plaintiffs' claim that the defendants failed to properly delineate the alleged "fraudulent" charges on the bills and/or to clearly denote that failure to pay the subject charges would or would not result in a disconnection of service.  However, that issue will be dealt with separately.

that the defendants "placed" on their monthly landline telephone bills unauthorized charges "delineated in the bills as 'Enhanced Services,' 'HBS Billing Services,' and/or 'ILD Teleservices.'" Plaintiffs' Complaint, ¶12. Furthermore, in Count VII, plaintiffs allege that the defendants "conspired" with Enhanced Services Billing and ILD Teleservices to impose the alleged charges for prepaid services never ordered or authorized. Finally, the plaintiffs' bills clearly show that the defendants were billing for services provided by the third-parties identified by the plaintiffs in their complaint. For example, plaintiff Kim Arnold's billing statement of February 21, 2009 includes three (3) separate pages each with the name and logo of the third-party responsible for the service being billed and each stating that "[t]his portion of your bill is provided as a service to the company identified above. Please review all charges appearing in this section. If you have any questions or concerns, call the telephone number shown above." The telephone number provided on each of these three (3) pages is for the relevant third-party. Defendants' Exhibit A, ATTMO Arnold 000168-170. This billing identification of the third-parties responsible for the charges is the same for all the plaintiffs throughout their respective billing statements.

The point is that regardless of the plaintiffs' semantics in pleading their claims, the facts taken in the light most favorable to the plaintiffs, show that the plaintiffs' claims take issue with the defendants' inclusion of charges for allegedly unauthorized services by third-parties on the defendants' statements. The semantics doesn't change the fact that the defendants were acting as the billing agent for the third-parties identified by the plaintiffs in their complaint, a relationship recognized by the Missouri Public Service Commission and addressed by its rules and regulations governing telecommunications companies operating in Missouri.

Accordingly, the Court finds the plaintiffs' complaint, in its entirety, barred by the limitations of liability clause(s) in the applicable tariffs.

Even if the limitations of liability clause(s) in the applicable tariffs did not govern the defendants' third-party billing, the Court would still find that the plaintiffs' cause of action fails to state a claim upon which relief can be granted.

### Count I - Violation of the Federal Communications Act

Plaintiffs contend that the erroneous billing is a violation of Section 201(b) of the Federal Communications Act (FCA), 47 U.S.C. § 201. They further contend that the defendants' actions have violated the implementing Federal Communications Commission's (FCC) regulation 47 C.F.R. § 64.2401(c), commonly known as the Truth-in-Billing Requirements due to the "hidden" placement of the subject charges on the plaintiffs' billing statements. Defendants contend that Section 201(b) of the FCA, and the Truth-in-Billing regulations only apply to a carrier's billing for its own services, and do not apply to billing for the services of a third-party.

Contrary to the plaintiffs' attempt to semantically skirt the crux of their lawsuit, the fact is that the plaintiffs are asserting that the defendants have erroneously placed on the plaintiffs' billing statements third-party charges for services not authorized by the plaintiffs.

Title II sets forth the duties of common carriers in the provision of interstate communication services and establishes procedures for the enforcement of same. 47 U.S.C. §§ 201-224. Section 201(b) prohibits "unjust" and "unreasonable" practices in connection with an interstate communication service. Numerous courts, upon review of Section 201(b), have concluded that third-party billing and collection services provided by telecommunications companies (such as the defendants) are not considered a "communication service" within Title II of the FCA. Brittan Communications International Corp. v. Southwestern Bell Telephone Co.,

12

313 F.3d. 899, 904-06 (5th Cir. 2002); <u>Nwabueze v. AT&T, Inc.</u>, 2011 WL 332473, *9-*12

(N.D.Cal. Jan. 29, 2011); <u>Moore v. Verizon Communications, Inc.</u>, 2010 WL 3619877, *7-*9

(N.D.Cal. Sept. 10, 2010); <u>Chladek v. Verizon N.Y., Inc.</u>, 96 Fed.Appx. 19, 2004 WL 816376,

*3 (2nd. Cir. 2004).  The Court has reviewed these opinions carefully and concurs with their

analysis and ultimate determination that Title II, Section 201(b), 47 U.S.C. § 201, does not apply

to claims for erroneous third-party billing and collection services.

Furthermore, plaintiffs' claims based on the Truth-in-Billing regulations of 47 U.S.C. §

64.2401 fail because these regulations were promulgated under Title II of the FCA.  Finally, the

FCC itself has expressly recognized that the Truth-in-Billing regulations do not apply to third-

party billing services.  *See*, **In re Truth-in-Billing Format, First Report and Order and**

**Further Notice of Proposed Rulemaking**, 14 F.C.C.R. 7492, 14 F.C.C.R. 17090, 14 FCC Rcd.

7492, 14 FCC Rcd. 17090, 15 Communications Reg. (P&F) 912, 1999 WL 292765 (F.C.C); *see*

*also*, <u>Nwabueze</u>, at *11; <u>Moore</u>, at *8-9.  The Court concurs and finds that plaintiffs' Count I for

violation of the FCA fails to state a claim upon which relief can be granted.

### Counts I-V and Count VII

Plaintiffs contend that defendants have been unjustly enriched by hiding these charges for

unauthorized services.  Plaintiffs contend that they did not "knowingly" pay for these

unauthorized services and when they "discovered" the billings, they brought it to the defendants'

attention and demanded a refund.  Plaintiffs further contend that they did not voluntarily pay

these charges because the defendants failed to distinguish on the billing statements between

charges for which non-payment would or would not result in disconnection of services.

Defendants counter that plaintiffs cannot recover under their claim for unjust enrichment because

they voluntarily paid the subject charges; and that these charges were not "hidden" but rather

clearly set forth on a separate page of the billing statements, with a separate letterhead explicitly

identifying said charges as third-party charges.  Defendants further contend that these charges

were in capital letters for clear identification.  Finally, the defendants contend that all of the

plaintiffs' statements contained a separate section under the title: "News You Can Use" which

has a subsection entitled: PREVENT DISCONNECTION.  This subsection regarding

disconnection of services states in pertinent part:

> Please be aware that all charges must be paid each month to keep
> your account current and prevent collection activities.  We are
> required to inform you that certain charges such as your telephone line,
> extended area service and mileage charges MUST be paid in order to
> prevent interruption of basic local service.  These charges are already
> included in the Total Amount Due and are [ ][3].  Also, neglecting to
> pay for other charges such as the SBC Advantage Plan, long distance.
> voice mail, InLine, wireless, and Internet may result in these services
> being interrupted.

Defendants' Exhibit A and B - Billing Statements for Kim Grant (a/k/a Kim Arnold) and

William Pruitt.

The elements of an unjust enrichment claim require a showing that 1) the plaintiff

conferred a benefit on the defendant; 2) the defendant appreciated the benefit; and 3) the

defendant accepted and retained the benefit under inequitable and/or unjust circumstances.

Hargis v. JLB Corp., 357 S.W.3d. 574, 586 (Mo. 2011) *citing* Howard v. Turnbull, 316 S.W.3d.

431, 436 (Mo.App. 2010); *see also*, Garrett v. Cassity, 2011 WL 3235633, *9 (E.D.Mo. July 28,

2011)(citing Missouri law for an unjust enrichment claim).

The voluntary payment doctrine is a recognized defense to a claim for unjust enrichment.

Huch v. Charter Communications, 290 S.W.3d. 721, 726-27 (Mo. 2009); Howard v. Turnbull, at

437; Pittman v. City of Columbia, 309 S.W.3d. 395, 403-04 (Mo.App. 2010); *see also*, McCall v.

---

[3]This amount differs per individual plaintiff and their respective billing statements.

<u>Monro Muffler Brake, Inc.</u>, 2010 WL 4670736, *3 (E.D.Mo. Nov. 10, 2010)(*citing* <u>Huch</u>, *supra.*). This doctrine provides that "a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back, though the payment is made without sufficient consideration, and under protest." <u>Huch</u>, at 726. "Unless there is fraud or duress, the voluntary payment doctrine prohibits a person who voluntarily pays money with full knowledge of the facts from recovering money." <u>Huch</u>, at 726; <u>Pittman</u>, at 403-04.

Here plaintiffs contend that at some unknown point in time they "realized" that they had been paying for services never authorized by them. They contend that they paid the charges before ascertaining they were for services never ordered because said charges were not set apart from other charges for which non-payment would result in a disconnection of service. They further contend that they sought a refund from the defendants but were denied the refunds; thus, their payments were not voluntary.

Firstly, the plaintiffs fail to contend that they paid the subject charges under duress. Even if duress could be implied by their contention that the charges were hidden, the statements themselves clearly show that the subject third-party charges were set out on a separate page, with a separate heading, and that all the statements contain an independent section clearly setting out the parameters of disconnection of service for non-payment. At best, viewing the complaint in a light most favorable to the plaintiffs, the allegations demonstrate a failure by the plaintiffs to carefully read their respective statements.

Secondly, the presence of the plaintiffs' fraud claims in their complaint fails to sufficiently challenge the voluntary payment doctrine. To be discussed later, plaintiffs' fraud claims fail to state a claim for which relief can be granted. However, with regard to the voluntary

payment doctrine, the fraud claims assert a "misrepresentation" based upon 1) these services allegedly being provided by the defendants although never authorized by the defendants; 2) said services being billed directly by the defendants; and 3) these charges being "hidden" on the billing statements. As already determined, these alleged services were provided by third-parties, and the defendants were acting only as the billing agent for these third-parties. Furthermore, as these statements clearly show, all the subject charges were separately stated on the billing statements as to content and provider. Thus, plaintiffs had full knowledge of the facts: the subject charges were for services allegedly provided by third-parties, and such charges were not subject to disconnection of services for non-payment.

Finally, plaintiffs Pruitt have received a partial reimbursement for the subject charges pursuant to a demand for such by the Pruitts. Document [37], filed June 13, 2011.

Upon careful consideration of the matter, the Court finds that the voluntary payment doctrine is applicable in this situation and Counts I-V, and VII should be dismissed.

## Counts V and VII

Plaintiffs appear to contend that the appearance of the subject charges for services unauthorized by the plaintiffs constitute a "misrepresentation" and that the defendants further conspired with certain identified third-parties to engage in a scheme to put charges on the billing statements for services never authorized by the plaintiffs. Defendants contend that Counts V and VII should be dismissed pursuant to the economic loss doctrine because the plaintiffs' claims arise from the parties' contractual relationship; i.e. the defendants' tariffs. Plaintiffs counter that their fraud claims do not arise from the contractual relationship but from some "duty" the defendants owed the plaintiffs.

Firstly, pursuant to Rule 9(b) Fed.R.Civ.P., all allegations of fraud must be stated with particularity. BJC Health System v. Columbia Casualty Co., 478 F.3d. 908, 917 (8th Cir. 2007). To meet the requirements of Rule 9(b), a pleading must include "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Abels v. Farmers Commodities Corp., 259 F.3d. 910, 920 (8th Cir. 2001) *quoting* Bennett v. Berg, 685 F.2d. 1053, 1062 (8th Cir. 1982); *see also*, Drobnak v. Andersen Corp., 561 F.3d. 778, 783 (8th Cir. 2009); Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d. 736, 746 (8th Cir. 2002)(citations omitted); Stephens v. Arctic Cat, 2012 WL 628867, *3 (E.D.Mo. Feb. 27, 2012); Settle v. Southwest Bank, 2010 WL 2041366, *4 (E.D.Mo. May 21, 2010). In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. Drobnak, at 783 *quoting* United States ex. rel. Joshi v. St. Luke's Hospital, 441 F.3d. 552, 556 (8th Cir. 2006)(citations omitted); BJC Health Systems, at 917 *citing* United States ex. rel. Costner v. URS Consultants, Inc., 317 F.3d. 883, 888 (8th Cir. 2003). Compliance with the particularity requirements of Rule 9 requires plaintiffs to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." In re BankAmerica Corp. Securities Litigation, 78 F.Supp.2d. 976, 987 (E.D.Mo. 1999)(citation omitted). "[C]onclusionary allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Drobnak, at 783 *quoting* Schaller Tel., at 746 (*quoting* Commercial Prop.Inv., Inc. v. Quality Inn Int'l, Inc., 61 F.3d. 639, 644 (8th Cir. 1995)); BJC Health Systems, at 917 *quoting* Commercial Prop.Inv., *supra.* Rule 9(b) should be read "in harmony with the principles of notice pleading". BJC Health Systems, at 917 *quoting* Schaller Tel., at 746 (*quoting* Abels, at 920). However, allegations pleaded on information and belief

usually do not meet the heightened particularity pleading requirements of Rule 9(b).  Drobnak, at 783 (citations omitted).

Construing the facts as pleaded in a light most favorable to the plaintiffs, the Court finds that the allegations of fraud and conspiracy to commit fraud do not satisfy the requirement of Rule 9(b).  Plaintiffs have not identified with the requisite specificity what services were allegedly billed without authorization by which defendants.  They simply allege that "deceptive charges for prepaid services" were "placed on the monthly landline telephone bills of Plaintiffs" by the "Defendants."  The complaint fails to allege which of the defendants "placed" the unidentified "prepaid services" on which of the plaintiff's bills or delineate among the identified "fraudulent charges" as to whether all three appeared on all the plaintiffs' bills or not.  Plaintiffs, as a whole, simply allege that the defendants, as a whole, "placed" on their respective bills charges for "prepaid services" under the names of "Enhanced Services," "HBS Billing Services," and/or "ILD Teleservices."  The only time period alleged is that these charges began "being placed on" plaintiff Arnold's bills on or about March 2006, and "placed on" plaintiffs Pruitts' bills on or about December 27, 2008.  Furthermore, plaintiffs fail to provide any notice as to when they "discovered" the allegedly fraudulent charges.  Plaintiffs, again, further lump their actions and the defendants' actions together by simply stating that "Plaintiffs called Defendants' customer service" to complain, and "Plaintiffs informed Defendants that they never authorized, ordered, or requested the prepaid services" appearing on their statements.  There is no time period identified as to which plaintiff called which defendant, and whom any of the plaintiffs spoke with on behalf of any one of the defendants.

The plaintiffs' conspiracy to commit fraud is especially vague as to the particulars required by Rule 9(b).  Count VII simply alleges that the "Defendants agreed" with certain

named third-parties to "participate in an unlawful scheme to defraud Plaintiffs" by imposing

charges for the allegedly unauthorized services. Plaintiffs fail to identify with any specificity any

aspects of the alleged "agreement" to engage in the legally conclusory "scheme to defraud".

Plaintiffs simply improperly plead the "overt acts" in furtherance of the alleged "scheme to

defraud" to be nothing more than the alleged fraudulent act in and of itself - the charges for

services allegedly unauthorized by the plaintiffs.  Outside of using boilerplate language, plaintiffs

have failed to plead any objective factual basis for Count VII.

*Assuming arguendo*, that the plaintiffs have met the pleading requirements for Rule 9(b),

plaintiffs still cannot recover tort damages under their claims for fraud and conspiracy to commit

fraud under the economic loss doctrine.

In Missouri, the economic loss doctrine serves to prohibit a plaintiff from seeking to

recover in tort for economic losses that are contractual in nature.  Autry Morlan Chevrolet,

Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d. 184, 192 (Mo.App. 2010).  Historically,

recovery in tort for purely economic damages is limited to cases where there is personal injury,

damage to property other than that sold, or destruction of property sold due to some violent

occurrence.  Autry Morlan Chevrolet, Cadillac, at 192 (citations omitted). However, the doctrine

has been held not to bar an action in tort if the contract recognizes a special relationship.  Autry

Morlan Chevrolet, Cadillac, at 193.

Plaintiffs assert that they are entitled to tort damages pursuant to their fraud claims

because the alleged "fraudulent billing" is "more than just a broken contractual promise."

Plaintiffs' Memorandum in Opposition [34], pgs. 8-9.  Plaintiffs fail to expressly explain why the

alleged "fraudulent billing" is more than a broken promise except to make the circuitous

argument that the claimed wrongs sound in intentional tort of fraud which is separate from the

alleged contract because the duty not to engage in fraud is imposed by law, not by contract. This argument is simply meritless.

Firstly, the plaintiffs concede that the parties' relationship is grounded in contract. Secondly, they fail to plead the existence of any independent duty establishing a telephone company's obligation with respect to the alleged fraudulent billing on behalf of third-parties. They simply state that there is some duty not to engage in fraud imposed by law; yet, fail to cite a single case in support of this generalization.

The plaintiffs have alleged a business relationship grounded in contract. "[T]he existence of a business relationship does not give rise to a fiduciary relationship, nor a presumption of such a relationship.". <u>Autry Morlan Chevrolet Cadillac</u>, at 194 *citing* <u>Chmieleski v. City Products Corp.</u>, 660 S.W.2d. 275, 294 (Mo.App. 1983); *see also*, <u>Moore v. Verizon Communications</u>, 2010 WL 3619877 at *15 (citation omitted). Other courts have addressed the relationship between customer and telephone company and concluded that such a relationship is a business relationship, not a fiduciary relationship. *See*, <u>Moore</u>, *supra.*; *see also*, <u>McDonnell Douglas Corp. v. General Tel. Co. of California</u>, 594 F.2d. 720,725 (9th Cir. 1979); <u>Simpson v. U.S. West Communications, Inc.</u>, 957 F.Supp.201, 206 (D.Or. 1997). Here, plaintiffs have failed to cite a single case supporting their contention that some type of relationship outside the parameters of the contract, especially a fiduciary relationship, existed between them and the defendants as to billing matters. Plaintiffs have failed to state a claim because they allege no facts giving rise to a fiduciary duty. Thus, plaintiffs' fraud and conspiracy to commit fraud claims are barred by the economic loss doctrine and fail to state a claim upon which relief can be granted.

### Count IV

Defendants contend that the plaintiffs have failed to properly plead facts establishing a breach of the implied covenant of good faith and fair dealing. They argue that plaintiffs have done nothing more than plead the legal conclusion that the defendants have breached the implied covenant of good faith and fair dealing by "engaging in the practice of collecting fees for unauthorized prepaid services while making inadequate disclosures regarding these charges to their customers." Plaintiffs' Complaint [1], ¶59. Essentially, plaintiffs have claimed only that the defendants "breached the covenant" by "collecting fees for unauthorized prepaid services" and making "inadequate disclosures" of said fees. Defendants assert that in order to properly plead a breach of the implied covenant of good faith and fair dealing, the plaintiffs must plead (and ultimately prove) that the defendants acted in "bad faith," which plaintiffs have failed to do.

Plaintiffs contend that they have impliedly alleged that the defendants' acts in collecting the subject fees were "deliberate" and "dishonest" and that is all that is necessary to set forth their claim in Count IV. They cite to the case General Insurance Co. of America v. Commerce Bank of St. Charles, 505 S.W.2d. 454 (Mo.App. 1974) in support of this argument.

Upon careful consideration of the matter, the Court finds that the plaintiffs' have failed to state a claim for breach of implied covenant of good faith and fair dealing upon which relief can be granted.

Missouri law implies a covenant of good faith and fair dealing in every contract. BJC Health System, at 914 *citing* Farmers' Elec. Coop. v. Missouri Dept. of Corrections, 977 S.W.2d. 266, 271 (Mo. 1998); Cordry v. Vanderbilt Mortgage & Finance, Inc., 445 F.3d. 1106, 1112 (8th Cir. 2006)(*citing* Farmers' Elec. Coop., *supra.*); Citimortgage, Inc. v. Just Mortgage, 2012 WL 1060122, *15 (E.D.Mo. March 29, 2012)(*citing* Farmers' Elec. Coop., *supra.*); Citimortgage,

Inc. v. Mason Dixon Funding, 2011 WL 1344031, *3 (E.D.Mo. April 8, 2011)(*citing* Farmers' Elec. Coop.); Missouri Consolidated Health Care Plan v. Community Health Plan, 81 S.W.3d. 34, 45 (Mo.App. 2002). This duty arises pursuant to contract and is a "contract remedy". Koger v. Hartford Life Ins., 28 S.W.3d. 405, 412 (Mo.App. 2000).  "This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.". BJC Health Systems, at 914 *citing* Mo. Consol. Health Care Plan, at 45. The good faith obligation requires the contracting parties not prevent or hinder performance of the contract by either party.  Finova Cap. Corp. v. Ream, 230 S.W.2d. 35, 45 (Mo.App. 2007); Schell v. LifeMark Hosps. of Missouri, 92 S.W.3d. 222, 230 (Mo.App. 2002); VI, Inc. v. Infosoft Technologies, Inc., 2008 WL 239784, *16 (E.D.Mo. January 28, 2008)(*citing* Schell, *supra.*).  "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'".  Cordry, at 1112 *quoting* Mo. Consol. Health Care Plan, at 46; *see*, BJC Health Systems, at 914 (*quoting* Mo. Consol. Health Care Plan, *supra.*).  To establish a violation of the covenant of good faith and fair dealing, a plaintiff must show more than just the defendant made an erroneous decision but that "the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion."  Cordry, at 1112 *citing* Mo. Consol. Health Care Plan, at 48-49; *see*, BJC Health Systems, at 914; Citimortgage v. Just Mortgage, at *15 *citing* Mo. Consol. Health Care Plan, *supra..* There is no "reasonableness" requirement under the covenant, and there is no breach of the covenant if a party exercises its discretion in making a business judgment.  BJC Health Systems, at 914 (citation omitted); Cordry, at 1112 *citing* Mo. Consol. Health Care Plan, at 48-49.  The covenant is also not "an overflowing cornucopia of wished-for legal duties."

Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d. 1063, 1066 (8th Cir. 1996); TVI, at *16 (*quoting* Comprehensive Care Corp., *supra.*).  "Although phased in moralistic overtones, good faith does not import into contract law the negligence principles of tort law."  TVI, at *16 *citing* Mo. Consol. Health Care Plan, at 47-48.

Plaintiffs argue that they have substantively alleged that the defendants acted "dishonestly" and cite General Ins. Co. of America v. Commerce Bank of St. Charles, *supra.* in support of their argument that such an allegation is sufficient for pleading a claim for breach of implied covenant of good faith and fair dealing.  In General Ins. Co. of America, the Missouri appellate court determined that "bad faith" as used in the Uniform Fiduciaries Act, § 456.290 R.S.Mo. (1969), rendered the defendant bank liable to the principle for checks drawn by a fiduciary if the bank paid the checks with knowledge of certain facts so as to characterize its actions as "dishonest" and not merely negligent.  General Ins. Co. of America, at 457.  The appellate court reasoned that although "moral guilt" cannot be equated with "bad faith," the standard was whether the defendant bank chose to disregard or refused to learn facts readily available to it.  Id., at 458.  Thus, under the Uniform Fiduciaries Act, the appellate court determined that "[t]he facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction."  Id., at 458.

Here, a banking transaction is not involved, nor is the Uniform Fiduciaries Act implicated.  Missouri law, outside the scope of banking transactions under the Uniform Fiduciaries Act, does not impose the element of "dishonesty" in a claim for breach of implied covenant of good faith and fair dealing.  Instead, Missouri law imposes an element of "bad faith" and/or "arbitrary and capricious" conduct by a defendant, none of which has been pleaded by the

plaintiffs.   Thus, plaintiffs have failed to state a claim for breach of implied covenant of good faith and fair dealing for which relief can be granted.

Finally, the plaintiffs offer the argument that they can allege inconsistent theories of recovery in their complaint, and need not choose which to proceed upon until trial. *See*, Trimble v. Pracna, 167 S.W.3d. 706 (Mo. 2005).  They advance this argument with respect to their claims for breach of contract and for unjust enrichment.  Normally, this would be the case but not here.

Plaintiffs appear to argue that they can present claims based on the existence of a contract or the non-existence of a contract; however, their own complaint, as a matter of law, asserts that the plaintiffs and the defendants entered into a written contractual relationship (tariffs), and plaintiffs concede that the disputed bills were generated as a result of this contractual relationship.  Plaintiffs' Complaint [1], ¶¶ 10, 12, 47, and 56.  Plaintiffs simply have no factual basis by which to maintain their claim for unjust enrichment grounded in "quasi-contract."  This isn't a matter of "inconsistent theories" when one theory is completely devoid of any factual basis for recovery.  Plaintiffs' argument regarding the "election of remedies doctrine" fails.

For the reasons set forth above, the Court will grant the defendants' motion to dismiss [20].

Dated this  26th  day of April, 2012.


_____
UNITED STATES DISTRICT JUDGE